IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS FAIRCHILD, | : | |
| | : | No.  23-cv-1506-JMY |
| v. | : | |
| | : | |
| IT LANDES COMPANY, LLC, & I.T. LANDES AND SON, INC., AND HB MCCLURE COMPANY, LLC., | : : : | |

MEMORANDUM

**Younge, J.**                                                                                           **September 9, 2024**

Currently before the Court is the Defendants' motion for summary judgment. The Court finds this matter appropriate for resolution without oral argument. Fed R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth in this Memorandum, Defendants' Motion will be Denied.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**:

Plaintiff, Dennis Fairchild, has brought this action against his former employers, IT Landes Company, LLC, I.T. Landes & Son, Inc. and HB McClure Company, LLC ("Defendants"), under of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§ 621 *et seq*.), Pennsylvania common law, and the Pennsylvania Human Relations Act ("PHRA"). (Complaint, ECF No. 1.)  Plaintiff alleges that Defendants refused to select him for an open available superintendent position, and selected him for a reduction in force because of his age, his disabilities and/or requests for/utilization of medical/workers' compensation leave, in favor of significantly younger, less experienced, and less tenured employees. (*Id.*)

Plaintiff, who is 59 years old, began his employment with Defendants on February 28, 2016 as a Commercial Construction Foreman. (PSOF ¶1, ECF No.32-1.)  Plaintiff joined Defendants with more than 32 years of relevant experience in the industry, including twenty-two

and one half (22.5) years as a foreman with his immediately preceding employer.  (*Id.* ¶2.)  Plaintiff also has a specialization in heating, air conditioning and refrigeration that he completed at Luzern County Community College in 1994.  (*Id.* ¶3.)  Plaintiff received favorable reviews and positive performance evaluations for several years after he began working for Defendants.  (*Id.* ¶4-8.)

In August of 2020, Plaintiff was involved in an automobile accident in which he injured his left knee.  Plaintiff was diagnosed with a torn meniscus which required surgical repair.  (*Id.* ¶24.)  Plaintiff underwent surgery on his left knee in August of 2021 and was placed out of work until December 2021.  (*Id.* ¶27.)  After returning to work, Plaintiff was involved in a work-related accident while lifting a heavy pipe in May of 2021.  (*Id.* ¶34.)  In the work-related accident, Plaintiff tore his right rotator cuff and bicep which resulted in numerous shoulder conditions and an inability to use his right arm.  (*Id.*)

The injuries that Plaintiff suffered required surgery, physical therapy and an extended recovery.  Plaintiff was placed on light-duty assignment at various points in time as a result of the injuries.  (*Id.* ¶36.)  For example, Plaintiff was placed on light duty from June 14, 2021 through July 27, 2021 and again from December 13, 2021 through February 23, 2022, following his return from the aforementioned leave for his knee surgery.  (*Id.*)  Plaintiff was also removed from work at various points as a result of his knee and shoulder injuries.  For example, Plaintiff was placed out of work – on workers compensation – from February 23, 2022 through November 1, 2022.  (*Id.* ¶37.)

Plaintiff received negative evaluations and complaints about his work during the period of time when he was on light-duty assignment and/or out of work in relationship to his knee and shoulder injury.  (*Id.* ¶44-59.)  The most recent period of time that Plaintiff was absent from

work was when he was on workers' compensation leave between February 23, 2022 through November 1, 2022.  (*Id.* ¶37.)  Plaintiff was selected along with a group of coworkers to be included in a reduction in force, and he was terminated from employment with Defendants on January 24, 2023.  (*Id.* ¶98.)

When Plaintiff was employed with Defendants, he was supervised by Jeremy Bergey, Director of Operations, who was 39 years old.  (*Id.* ¶13.)  Matt Benner, who was 44 years old, also served as Defendants' Director of Operations.  (*Id.* ¶14.)  Both Mr. Bergey and Mr. Benner were jointly supervised by Ken Paul, Vice President of Construction Operations.  (*Id.*)  During one of the periods of time that Plaintiff was authorized for light-duty assignment, he was supervised by Project Manager Jason Byrd.  (*Id.* ¶44.)  Tabitha Sedio was the Director of Risk Management for HB Mechanical Group.  (*Id.* ¶52.)  She was responsible for administering all of I.T. Landes workers' compensation claims. (Paul's Dep. page 49-54, Opposition to Motion for Summary Judgment, Ex. D, ECF No. 32-3.)

**II.    LEGAL STANDARD:**

Summary Judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012).  To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).  A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.  A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III. DISCUSSION:

Defendants' motion for summary judgment will be denied because Plaintiff came forward with sufficient evidence to establish disputed issues of material fact for a fact-finding body to resolve in connection with both his age discrimination claims and disability discrimination claims.

A. **Plaintiff Came Forward with Sufficient Evidence in Support of His Age Discrimination Claims to Survive Defendants' Motion for Summary Judgment:**

The ADEA prohibits age discrimination in employment against any person over the age of forty. 29 U.S.C. §§ 623(a)(1), 631(a). Aside from actual discrimination, retaliation is prohibited as well. Section 623(d) of the ADEA states in pertinent part: "[i]t shall be unlawful for an employer to discriminate against any of his employees . . . because such individual, member or applicant for membership has opposed any practice made unlawful by this section." 29 U.S.C. § 623(d).

To establish a *prima facie* case of age discrimination, Plaintiff must show that: (1) that he is over 40; (2) he is qualified for the position in question; (3) he suffered an adverse employment decision; and (4) that he was replaced by a sufficiently younger person to permit an inference of age discrimination or that there is evidence to create an inference that the employment decision was because of his age. *Duffy v. Paper Magic Group*, 265 F.3d 163, 167 (3d Cir. 2001); *Sullivan v. Temple Univ.*, 2013 U.S. Dist. LEXIS 30431 (E.D. Pa. 2012). A plaintiff in an employment discrimination action may establish a *prima facie* case either through direct evidence of discrimination, *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121 (1985), or through the framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and its progeny.

In opposition to Defendants' motion for summary judgment, Plaintiff came forward with evidence to support his age discrimination claim. Defendants were actively seeking to hire a superintendent around the time that Plaintiff was selected for termination in connection with the reduction in force. Plaintiff avers that he inquired about applying for the open position as superintendent on multiple occasions. (Plaintiff's Dep. page 121, Opposition to Motion for Summary Judgment, Ex. A, ECF No. 32-3.) Plaintiff testified that his immediate supervisor, Jeremy Bergey, Director of Operations for Defendants, told Plaintiff that he would not be

5

considered for the open position because Plaintiff was too old. (Plaintiff's Dep. pages 64-65, 121, 124, 128, 134-135.) Plaintiff testified that Mr. Bergey responded to Plaintiff's inquiry about the open position by stating, "I feel bad for you older guys, we are only hiring younger guys for these jobs." Plaintiff further testified that Mr. Bergey said, "I feel sorry for you older guys. Because of your age . . . we did not think that you could handle the computer work that goes along with the [superintendent] job." (Fairchild Deposition ¶¶ 121.)

Plaintiff's testimony related to derogatory/discriminatory comments made by Mr. Bergey is corroborated in the record by affidavits and deposition testimony from coworkers Adam Mabry, Angel Morales, Danny Flores, and William Fellows. (SMOF ¶¶87, 88, 92, 94.) All four men aver and attest to hearing Mr. Bergey make discriminatory and insulting comments in relationship to the age of older people who worked for Defendants. (*Id.*) Mr. Fellows specifically attests to overhearing Mr. Bergey make age related discriminatory comments about Plaintiff. (*Id.* ¶90.) The age-related insults and discriminatory comments that were purportedly made by Mr. Bergey viewed in conjunction with the fact that Defendants ultimately hired a thirty-five (35) year old individual to fill the superintendent position constitutes evidence that a fact-finding body could consider on the issue of age discrimination.

The Court is not persuaded to enter summary judgment based on Defendants' argument that Plaintiff lacked the necessary computer skills to become a superintendent. In response to Defendants' motion for summary judgment, Plaintiff came forward with evidence to create a factual dispute as to the necessary level of computer skill required for that position. For example, Plaintiff cites to Defendants' own job description for the open position which does not list computer skills as a necessary requirement. (*Id.* ¶¶ 82, 84.) Plaintiff also cites to witness testimony and argues that the necessary level of computer skill would simply have required using email and pulling up documentation for review such as drawings and pictures. (*Id.* ¶ 83.) Plaintiff asserts that he was

qualified for the superintendent role based on his nearly 40 years of experience in the industry which included approximately seven (7) years of experience with Defendants.  (*Id.* ¶¶ 2, 98.)

Defendants also fail to persuade the Court that entry of summary judgment is appropriate based on the argument that Mr. Bergey was not involved in the decision to selected Plaintiff for termination in the reduction in force.  Plaintiff successfully created a disputed issue of material fact pertaining to Mr. Bergey's level of involvement in deciding which employees would be selected for termination in the reduction in force.  In response to Defendants' motion for summary judgment, Plaintiff cites to Defendants' interrogatory responses which indicate that "Ken Paul received names of employees with serial performance and behavioral deficiencies from Jeremy Bergey and Matt Benner."  (*Id.* ¶137.)  Plaintiff also cites to emails which illustrate that Mr. Paul conferred with Mr. Bergey and Mr. Benner when deciding which employees would be terminated in connection with the reduction in force.  (*Id.* ¶134.)  Plaintiff also cites to deposition testimony which indicates that Mr. Paul approached Mr. Benner and Mr. Bergey and asked them if they had any names of employees with production or attendance issues.  (SMOF ¶132.)  In response to Defendants' motion for summary judgment, Plaintiff successfully called into question Defendants' decision-making process for selecting which employees would be terminated in connection with the reduction in force.  Plaintiff successfully illustrated that there are disputed issues of material fact surrounding the question of whether Plaintiff's age played a role in Defendants' decision to terminate Plaintiff in the reduction in force and to decline to consider him for the open superintendent position.

**B.**     **Plaintiff Came Forward with Sufficient Evidence in Support of His Disability Discrimination Claims to Survive Defendants' Motion for Summary Judgment**:

To establish a *prima facie* case of disability discrimination, Plaintiff must show: (1) he is disabled within the meaning of the ADA; (2) he was qualified for the position; and (3) he suffered an adverse employment action as a result of disability discrimination.  *Shaner v.*

*Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); *Deane v. Poconon Med. Ctr.*, 142 F.3d 138, 142 (3d Cir. 1998).  Defendants challenge Plaintiff's disability discrimination claim by arguing that Plaintiff does not have a qualifying disability, cannot show an inference of discrimination, and cannot prove causation.

In response to Defendants' attack on his qualifying disability, Plaintiff came forward with evidence to establish that he suffered serious injuries to his left knee and right shoulder which required surgery, physical therapy, and an extended recovery period.  (*Id.* ¶¶21, 41.)  Plaintiff also presented evidence of ongoing medical treatment in relationship to both injuries.  (*Id.*)  Medical conditions that are temporary or episodic can be considered a qualifying disability under the ADA.  29 C.F.R. § 1630.2(j)(1)(ix), 29 C.F.R. § 1630.2(j)(1)(vii).  In addition, the Third Circuit Court of Appeals has noted that, in making the determination as to whether an individual has a qualifying disability, "it is the employer's perception which matters, and not the employee's actual limitation."  *Vierra v. Wayne Mem. Hosp.,* 2006 U.S. App. LEXIS 3062, at * 10, n.3 (3d Cir. 2006).  As will be discussed in more detail herein below, Plaintiff came forward with numerous statements purportedly made by Defendants' supervisors and management which – if believed as true – illustrate Defendants' perception of Plaintiff as disabled.  Therefore, Plaintiff came forward with evidence that could be considered in relationship to his qualifying disability and/or Defendants' perception of him as being disabled.

In regard to the question of whether Plaintiff suffered an adverse employment action as a result of his disability, Plaintiff offers the timing of Defendants' decision to terminate him in connection with the reduction in force.  Plaintiff's name was first added to the reduction in force list on January 4, 2023.  Plaintiff had returned from his medical and/or workers' compensation leave just two months prior on November 1, 2023.  (PSOF ¶¶37, 42.)  Plaintiff also offers

8

various derogatory and discriminatory comments that were purportedly made in reference to his alleged disabilities. For example, Mr. Bergey purportedly told Plaintiff, "you had every part of your body operated on", "what are you, the bionic man? You're a physical mess. You might want to look into starting a new career." (*Id.* ¶71.) Plaintiff's testimony related to derogatory/discriminatory comments made by Mr. Bergey is corroborated in the record by affidavits and deposition testimony from coworkers Adam Mabry, Angel Morales, Danny Flores, and William Fellows. (*Id.* ¶¶87, 88, 92, 94.) All four men aver and attest to hearing Mr. Bergey make discriminatory and insulting comments in relationship to coworkers who were injured on the job or out of work due to medical conditions. (*Id.*)

Plaintiff also testified that when he was on light duty authorization and being supervised by Project Manager, Jason Byrd, Mr. Byrd purported told Plaintiff, "you need to find another job to go to. Or you need to call your boss and, you know what I mean, get off my job because you're wasting my time." (*Id.* ¶45.) Mr. Byrd also purportedly stated, "I'm sick of these guys complaining what they can and what they can't do. You know, they just don't want to work . . . if you can't do nothing, you don't need to be on my job." (*Id.* ¶46.) The statements purportedly made by Mr. Byrd are corroborated in the record by an email that Mr. Byrd purportedly sent on February 11, 2022 in which he referenced Plaintiff and another individual with workers' compensation medical restrictions, Todd Delap, stating that they were "Dead weight." (*Id.* ¶54.) Plaintiff further cites to statements made by human resources and management in which they accused him of "milking the system" because he needed accommodations, was on medical leave and workers' compensation. (*Id.* ¶64.) In reference to Plaintiff's physical therapy treatment, Ms. Sedio, purportedly stated, "what's this guy, a b[]tch? He's a foreman. He can come back to work. He doesn't have to do any physical labor at all. Why is he taking so long?" (*Id.* ¶67.)

The timing of Defendants' decision to terminate Plaintiff's employment under the reduction in force coupled with the various statements that were purportedly made in relationship to Plaintiff's alleged disability creates a disputed issue of material fact as to whether his alleged disability influenced Defendants' decision-making process.  As previously mentioned, Plaintiff successfully called into question methods Defendants used to decide which employees were selected for termination under the reduction of force.  Plaintiff specifically came forward with evidence to challenge Defendants' argument that Mr. Bergey was not involved in selecting employees who would be terminated in connection with the reduction in force.

## IV.   CONCLUSION:

For these reasons, Defendants' motion for summary judgment will be denied.

BY THE COURT:

   /s/ John Milton Younge   
Judge John Milton Younge